## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEROME G. SULLINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 10-125-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

---

Joseph M. Bernstein, Esq.  Counsel for petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

## MEMORANDUM OPINION

March 28, 2013
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Jerome Sullins ("Sullins"). (D.I.8) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2005, Sullins was the target in an investigation being conducted by the Wilmington Police, wherein they set up a controlled purchase of heroin in the parking lot of a Ho-Ho Market. *Sullins v. State*, 945 A.2d 1168 (Table), 2008 WL 880166, at *1 (Del. Apr. 2, 2008). After Sullins and his co-defendant Alfredo Ramos arrived in the parking lot, a confidential informant purchased heroin from Sullins. Following this transaction, Sullins left the scene and the police attempted to stop his car. Sullins kept fleeing from the police and did not stop, even after he ran into a car driven by another officer who was responding to the scene. During the chase, Ramos threw drug evidence out of the passenger window. Sullins eventually abandoned the car and was apprehended as he attempted to enter a house. A later search of Sullins' home uncovered a digital scale, stamp kit, and empty plastic baggies. *Id.*

In May, 2005, Sullins was indicted on the following offenses: trafficking in heroin; possession of a deadly weapon during the commission of a felony; possession with intent to deliver heroin; possession with intent to deliver cocaine; second degree assault; use of a vehicle for keeping controlled substances; tampering with physical evidence; criminal mischief; resisting arrest; second degree reckless endangering; and three driving offenses. (D.I. 16 at 2) After a four day trial, a Superior Court jury convicted Sullins of trafficking in heroin, possession with intent to distribute heroin, possession with intent to deliver cocaine, maintaining a vehicle for

1

keeping controlled substances, tampering with physical evidence, second degree conspiracy, possession of drug paraphernalia, resisting arrest, reckless driving, leaving the scene of an accident, failing to report an accident, and failure to obey a police officer. The Superior Court sentenced Sullins to twenty-five years of imprisonment, suspended after fourteen years for a period of probation. Sullins appealed, and the Delaware Supreme Court affirmed his convictions. *Id.*

In December, 2008, Sullins filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), alleging; ineffective assistance; a discovery violation under *Brady v. Maryland*; and failure to suppress evidence. The Superior Court summarily dismissed the motion, and the Delaware Supreme Court affirmed that judgment. *State v. Sullins*, 2009 WL 866184 (Del. Mar. 30, 2009); *Sullins v. State*, 2009 WL 3064044 (Del. Sept. 24, 2009). Rehearing *en banc* was denied. *Id.*

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on

3

notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless*, 172 F.3d at 260; *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

4

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently

explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

### III. DISCUSSION

Sullins asserts the following two grounds for relief in his petition: (1) defense counsel provided ineffective assistance by failing to obtain exculpatory finger print evidence and adequately introducing it at trial; and (2) the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by not disclosing allegedly exculpatory evidence. The court will review the claims *in seriatim*.

#### A. Claim One: Ineffective Assistance of Counsel

Sullins presented claim one to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court summarily dismissed the claim as meritless. Sullins contends that the Delaware Supreme Court's summary dismissal of claim one requires this court to review the claim *de novo*. (D.I. 8 at 9-10) Recent Supreme Court decisions clearly demonstrate otherwise.[1]

---

[1] The consequence of the *Richter/Johnson* presumption is that a federal habeas court must review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed]

6

*See Richter*, 131 S.Ct. 770, 784-85; *see also Johnson v. Williams*, ___ U.S. ___, 133 S.Ct. 1088 (Feb. 20, 2013)(if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits). Thus, habeas relief will only be warranted if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

---

to adjudicate the claim[s] de novo." *Johnson,* 133 S.Ct. at 1091. As explained by the *Johnson* Court,

> because it is by no means uncommon for a state court to fail to address separately a federal claim that the court has not simply overlooked, we see no sound reason for failing to apply the *Richter* presumption in cases like the one before us now. When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.

*Id.* at 1096.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard in affirming the Superior Court's decision. Thus, the Delaware Supreme Court's decision was not contrary to clearly established Federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Sullins' case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Sullins' ineffective assistance of counsel claim through "doubly deferential" lens. *Richter*, 131 S.Ct. at 788. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In his Rule 61 motion, Sullins argued that defense counsel was ineffective because he did not present to the jury "the information that [Sullins'] fingerprints were not on [the] evidence, [and such information would have] create[d] doubt as to the ownership of evidence and the credibility of the State's witnesses." (D.I. 22 at 3) The Superior Court summarily dismissed the claim, because the Rule 61 motion was "completely conclusory, and Sullins [] failed to support his claims

8

with facts." *State v. Sullins*, 2009 WL 3064044, at *1. The Delaware Supreme Court affirmed that judgment, opining that,

> [i]n order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." The defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal. In the absence of any evidence that Sullins' counsel committed any error that resulted in prejudice to Sullins, the Superior Court's dismissal of this [ineffective assistance of counsel] claim must also be affirmed.

*Sullins*, 2009 WL 3064044, at *1.

Now, in this proceeding, Sullins contends that counsel was ineffective both for failing to obtain the "exculpatory" fingerprint evidence, and for failing to adequately use the information that the latent fingerprints recovered from the package of drugs Ramos threw from Sullins' car did not match any of Sullins' fingerprints. Both of these arguments are unavailing. To begin, defense counsel filed a motion to compel "relating to fingerprints on a package containing drugs," and the Superior Court granted the request. Although Sullins contends that the State never provided the information, and that counsel was ineffective for not pursuing the matter further, the record demonstrates otherwise. For instance, in his opening statement, defense counsel informed the jury that they would hear about "fingerprinting" being done on the baggie of drugs found on the street, and how the latent fingerprints on the baggie did not match Sullins' fingerprints. Counsel could not have made this statement without having received the "exculpatory" fingerprint evidence prior to trial. During closing argument, defense counsel again referenced the fact that the latent fingerprints did not match Sullins' fingerprints. Given this record, and viewing the Delaware

Supreme Court's decision through doubly deferential lens, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying the first portion of claim one.

Sullins also contends that counsel was ineffective because he did not adequately use the "exculpatory" fingerprint evidence at trial. Specifically, he asserts that there was a strong possibility that the jury did not believe defense counsel's statements that the fingerprints on the baggie did not match Sullins' fingerprints because counsel did not produce "evidence" to this effect during the trial. This argument fails to establish sufficient prejudice under *Strickland*. At trial, it was never disputed that Ramos, not Sullins, threw the drug evidence from the car. Rather, the State's theory was that Sullins constructively possessed the drugs recovered from the streets, and thus, the evidence that Ramos' prints were on the baggies was neither exculpatory nor particularly beneficial to Sullins. To support its theory of constructive possession, the State presented the following evidence at trial: a) Sullins was the driver of the vehicle and fled (at a high speed on the wrong side of the road) when police attempted to stop the vehicle; b) two bags of heroin and $700 were found on Sullins' person when he was arrested; c) the bags recovered from both Sullins and the street were marked "G-Unit"; and d) a "G-Unit" stamp and a digital scale were recovered from Sullins' home. Considering that this substantial evidence established a strong connection between Sullins and the drugs, Sullins cannot demonstrate a reasonable probability that the result of his trial would have been different but for counsel's failure to "adequately" present the fingerprint evidence at trial. Thus, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this portion of claim one.

Accordingly, the court will deny claim one in its entirety for failing to satisfy § 2254(d).

### B. Claim Two: *Brady* Violation

In his second claim, Sullins contends that the State violated *Brady v. Maryland* by failing to disclose the allegedly exculpatory results of the fingerprint analysis prior to trial. Although Sullins presented this claim to the Delaware Supreme Court on post-conviction appeal, the Delaware Supreme Court denied this claim as barred by Delaware Superior Court Criminal Rule 61(i)(3) due to Sullins' failure to assert the issue on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Sullins has not alleged, and the court cannot discern, any cause for his failure to raise a Brady claim on direct appeal. In the absence of cause, the court will not address the issue of prejudice. The miscarriage of justice exception to the procedural default doctrine also does not apply, because Sullins has not provided new reliable evidence demonstrating his actual innocence. Thus, the court will deny claim two as procedurally barred.

Additionally, as previously discussed in claim one, Sullins assertion of a *Brady* violation is belied by the record; the State disclosed the results of the fingerprint analysis and defense counsel argued those results in his opening and closing statements at trial. Therefore, the court alternatively denies claim two as meritless.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Sullins' petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Sullins' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing. An appropriate order shall issue.